1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

TRAVYON C. HARBOR,

                Plaintiff,

        v.

CDCR, *et al*.,

                Defendants.

Case No. 2:19-cv-0384-JDP (P)

FINDINGS AND RECOMMENDATIONS THAT PLAINTIFF'S FOURTH AMENDMENT, EIGHTH AMENDMENT, FIRST AMENDMENT, CAL. CIV. CODE § 52.1, AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIMS PROCEED AND ALL REMAINING CLAIMS BE DISMISSED

FOURTEEN-DAY DEADLINE TO FILE OBJECTIONS

ECF No. 17

Plaintiff proceeds without counsel in this civil rights action brought under 42 U.S.C. § 1983. His Second Amended Complaint, ECF No. 17, is before the court for screening. He alleges that defendants violated his rights under the Fourth Amendment, First Amendment, Eighth Amendment, and Fourteenth Amendment. He further alleges violations of the Americans with Disabilities Act and of state law. For the reasons set forth below, I recommend that the court

1   allow plaintiff to proceed with his Fourth Amendment; Eighth Amendment; First Amendment;

2   Cal. Civ. Code § 52.1, Bane Act; and Intentional Infliction of Emotional Distress claims against

3   defendants Kernan, Martel, Cassilas, Grigsby, and Weinholdt—and dismiss the remaining claims

4   and defendants.

5   **Screening and Pleading Requirements**

6        A federal court must screen a prisoner's complaint that seeks relief against a governmental

7   entity, officer, or employee.  *See* 28 U.S.C. § 1915A(a).  The court must identify any cognizable

8   claims and dismiss any portion of the complaint that is frivolous or malicious, fails to state a

9   claim upon which relief may be granted, or seeks monetary relief from a defendant who is

10  immune from such relief.  *See* 28 U.S.C. §§ 1915A(b)(1), (2).

11       A complaint must contain a short and plain statement that plaintiff is entitled to relief,

12  Fed. R. Civ. P. 8(a)(2), and provide "enough facts to state a claim to relief that is plausible on its

13  face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The plausibility standard does not

14  require detailed allegations, but legal conclusions do not suffice.  *See Ashcroft v. Iqbal*, 556 U.S.

15  662, 678 (2009).  If the allegations "do not permit the court to infer more than the mere

16  possibility of misconduct," the complaint states no claim.  *Id.* at 679.  The complaint need not

17  identify "a precise legal theory."  *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024,

18  1038 (9th Cir. 2016).  Instead, what plaintiff must state is a "claim"—a set of "allegations that

19  give rise to an enforceable right to relief."  *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1264

20  n.2 (9th Cir. 2006) (en banc) (citations omitted).

21       The court must construe a pro se litigant's complaint liberally.  *See Haines v. Kerner*, 404

22  U.S. 519, 520 (1972) (per curiam).  The court may dismiss a pro se litigant's complaint "if it

23  appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which

24  would entitle him to relief."  *Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1208 (9th Cir. 2017).

25  However, "'a liberal interpretation of a civil rights complaint may not supply essential elements

26  of the claim that were not initially pled.'"  *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251,

27  1257 (9th Cir. 1997) (*quoting Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982)).

28

1

**Procedural Background**

2      Plaintiff initiated this action on March 5, 2019, alleging that (1) the staff at California

3  Health Care Facility ("CHCF") instituted an unconstitutional policy of subjecting inmates to nude

4  strip searches in front of live video cameras; (2) on February 6, 2018, correctional officers

5  retaliated against plaintiff for filing administrative grievances by employing excessive force

6  against him; and (3) on April 6, 2018, staff at CHCF ordered a dog to attack plaintiff in retaliation

7  for his lodging of complaints under the Americans with Disabilities Act.  ECF No. 1 at 6-8.  On

8  December 2, 2019, the court dismissed plaintiff's complaint with leave to amend because (1)

9  plaintiff stated intent to bring a class action, and plaintiff is barred from doing so; and (2) plaintiff

10  joined three unrelated claims.  ECF No. 6 at 2-4.  On January 15, 2020, plaintiff filed a First

11  Amended Complaint, ECF No. 11, and on April 22, 2020, the court dismissed the First Amended

12  Complaint because it still contained unrelated claims.  ECF No. 12.  On September 18, 2020,

13  plaintiff filed a Second Amended Complaint, which is now before the court.  ECF No. 17.

14  Plaintiff's Second Amended Complaint closely resembles his First Amendment Complaint,

15  except that it appears that he has abandoned his allegation that defendant Chamberlin ordered a

16  dog to attack plaintiff.  *See* ECF No. 17.

17

**Analysis**

18

**a.  Fourth Amendment Violation**

19      Plaintiff alleges that the staff at CHCF implemented an "underground" policy of forcing

20  inmates—including plaintiff—to undergo strip searches in front of video cameras and

21  correctional staff of the opposite sex.  ECF No. 17 at 6-7.  Plaintiff states that various defendants,

22  including A. Young, F. Casillas, M. Grigsby, Warden M. Martel, and Associate Warden T.

23  Weinholdt, were responsible for controlling and/or exercising this policy.  *Id.* at 3-5.  He also

24  alleges that, because of the foregoing policy, defendant F. Casillas forced him to undergo an

25  offensive search on October 31, 2017.  *Id.* ¶ 12.  While this search was ongoing, other

26  correctional staff allegedly destroyed some of plaintiff's personal property; he doesn't specify

27  what.  *Id.*

28      The Fourth Amendment protects against unreasonable searches, and that right is not lost

3

1   to convicted inmates.  *Jordan v. Gardner*, 986 F.2d 1521, 1524 (9th Cir. 1993).  However,

2   "incarcerated prisoners retain a *limited* right to bodily privacy."  *Michenfelder v. Sumner*, 860

3   F.2d 328, 333 (9th Cir. 1988) (emphasis added).  A detention facility's strip-search policy is

4   analyzed using the test for reasonableness outlined in *Bell v. Wolfish*, as "[t]he Fourth

5   Amendment prohibits only unreasonable searches."  *Bull v. City and County of San Francisco*,

6   595 F.3d 964, 971-72 (9th Cir. 2010) (alteration in original) (internal quotation marks omitted)

7   (*quoting Bell*, 441 U.S. at 558).  Under *Bell*, the court must balance "the need for the particular

8   search against the invasion of personal rights that the search entails."  *Bell*, 441 U.S. at 559.  In

9   order to do so, courts must consider "the scope of the particular intrusion, the manner in which it

10   is conducted, the justification for initiating it, and the place in which it is conducted."  *Id.*

11        Strip searches that are limited to "visual inspection," even if "invasive and embarrassing,"

12   can be resolved in favor of the institution.  *Bull*, 595 F.3d at 975 (holding that visual strip

13   searches that are held in a "professional manner and in a place that afforded privacy" and done to

14   prevent the smuggling of contraband did not violate Fourth Amendment).  However, any searches

15   done for the purpose of harassment violate the Constitution; the Supreme Court has held that

16   "intentional harassment of even the most hardened criminals cannot be tolerated" under the

17   Fourth Amendment's protections.  *Hudson v. Palmer*, 468 U.S. 517, 528 (1984).

18        In this case, plaintiff alleges that the search took place in front of a video camera, female

19   correctional staff, and others not participating in the search.  ECF No. 17 ¶ 23.  Plaintiff also

20   states that defendant Casillas harassed him during the search by making deprecating comments

21   about him while the search was ongoing.  *Id.* ¶ 24.  Taken as true, plaintiff has sufficiently stated

22   a Fourth Amendment claim against these defendants, and this claim will require a response.

### b.  First Amendment Claim

24        Plaintiff claims that on December 3, 2017, defendants Young and Casillas retaliated

25   against him for filing a grievance the previous month.  He alleges that they approached him in his

26   bunk and demanded that he submit to another strip search.  ECF No. 17 ¶¶ 13-14.  When he

27   refused, he was allegedly taken to a private area and sexually harassed.  *Id.*  Plaintiff states that

28   after filing a grievance on December 19, 2017 reporting the acts of retaliation by defendant

Casillas, defendant Weinholdt in further retaliation denied him a facility transfer. *Id.* ¶ 15.

The Constitution protects prisoners from deliberate retaliation by government officials for the exercise of their First Amendment rights. *See Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005); *Vignolo v. Miller*, 120 F.3d 1075, 1077-78 (9th Cir. 1997). Because retaliation by prison officials may chill an inmate's exercise of legitimate First Amendment rights, retaliatory conduct is actionable regardless of whether it otherwise constitutes misconduct. *Rhodes*, 408 F.3d at 567 (*citing Pratt v. Rowland*, 65 F.3d 802, 806 & n. 4 (9th Cir. 1995)); *see Thomas v. Evans*, 880 F.2d 1235, 1242 (11th Cir. 1989) ("The penalty need not rise to the level of a separate constitutional violation."). Even so, there must be a causal connection between the allegedly retaliatory conduct and the action that provoked the retaliation; a plaintiff must "show that the protected conduct was a 'substantial' or 'motivating' factor in the defendant's decision [to act]." *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989) (*citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

A plaintiff suing prison officials for retaliation under § 1983 must allege facts that show that: (1) "[A] state actor took some adverse action against [the] inmate (2) because of (3) that prisoner's protected conduct, and . . . such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes*, 408 F.3d at 567-68 (*citing Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000)).

Plaintiff alleges that after filing grievances, defendant Casillas subjected him to a strip search and mentioned plaintiff's prior grievances filed when directing him to take off his clothes. ECF No. 17 ¶ 27. Casillas, plaintiff states, told him that he was "going to pay for that 602" he filed. *Id.* ¶ 29. Plaintiff alleges that defendant Weinholdt denied him a facility transfer for submitting grievances. Plaintiff's allegations are sufficient to require a response.

### c. Eighth Amendment Excessive Force Claim

Plaintiff alleges that defendants Casillas and Grigsby, in retaliation for his grievances, pulled him from his bunk on February 6, 2018 and used excessive force against him. *Id.* He claims that they ripped him from his bunk as he slept, pushed him to the ground, and jumped on

1    his back.  ECF No. 17 ¶ 33.

2    "The Constitution does not mandate comfortable prisons, but neither does it permit

3 inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation marks and

4 citation omitted).  "[A] prison official violates the Eighth Amendment only when two

5 requirements are met[: f]irst, the deprivation alleged must be, objectively, sufficiently serious[;] a

6 prison official's act or omission must result in the denial of the minimal civilized measure of

7 life's necessities." *Id.* at 834 (internal quotation marks and citations omitted).  Second, the prison

8 official must subjectively have a sufficiently culpable state of mind, "one of deliberate

9 indifference to inmate health or safety." *Id.* (internal quotation marks and citations omitted).  The

10 official is not liable under the Eighth Amendment unless he "knows of and disregards an

11 excessive risk to inmate health or safety; the official must both be aware of facts from which the

12 inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

13 inference." *Id.* at 837.  Then he must fail to take reasonable measures to abate the substantial risk

14 of serious harm.  *Id.* at 847.  Mere negligent failure to protect an inmate from harm is not

15 actionable under § 1983.  *Id.* at 835.

16    "In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment [also]

17 places restraints on prison officials, who may not . . . use excessive physical force against

18 prisoners." *Farmer*, 511 U.S. at 832 (*citing Hudson v. McMillian*, 503 U.S. 1 (1992)).

19 "[W]henever prison officials stand accused of using excessive physical force in violation of the

20 [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith

21 effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*,

22 503 U.S. at 6-7 (*citing Whitley v. Albers*, 475 U.S. 312 (1986)).

23    Plaintiff's allegations that defendants Casillas and Grigsby used force when they grabbed

24 him out of bed while sleeping, forcefully tripped him, and slammed him to the ground by jumping

25 on his knees state a cognizable claim for relief.

26    **d.  Fourteenth Amendment Violation**

27    Plaintiff appears to allege that defendants Grigsby and Casillas retaliated against him for

28 reporting misconduct by denying him access to his mobility devices, thus violating the Fourteenth

Amendment.  ECF No. 17 ¶¶ 69, 71.  The substantive due process component of the Fourteenth

Amendment protects against actions so arbitrary that they shock the conscience.  *Cnty of*

*Sacramento v. Lewis*, 503 U.S. 833, 846-47, (1998); *see also Collins v. City of Harker Heights*,

503 U.S. 115, 130 (1992).  Negligent action does not violate substantive due process rights.

*Davidson v. Cannon*, 474 U.S. 344, 347 (1986); *Daniels v. Williams*, 474 U.S. 327, 333 (1986).

A prisoner must allege a due process claim premised on the denial of a protected liberty interest

that subjected him to an "atypical and significant hardship . . . in relation to the ordinary incidents

of prison life."  *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (finding that 30 days in prison

segregation unit does not implicate a liberty interest).

Here, plaintiff states that he was denied his mobility devices in retaliation for filing

grievances.  "Being denied basic mobility is an atypical and significant hardship."  *Quesnoy v.*

*Oregon*, No. 3:10-CV-1538-ST, 2011 WL 5439103, at *15 (D. Or. Nov. 4, 2011).  But plaintiff

fails to allege that he did in fact lose his mobility.  Indeed, he does not allege what specifically he

was denied, or that he was injured in any way by the denial.  His allegations are insufficient to

state a cause of action.  *See Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678.  The court's

previous screening order informed plaintiff that he would be given "one final opportunity to

amend his complaint."  ECF No. 12 at 3.  Accordingly, I recommend that this claim be dismissed.

### e.  Disability Discrimination

Plaintiff brings a claim for a violation of 42 U.S.C. § 12101, the Americans with

Disabilities Act, alleging that defendants Martel, Casillas, and Grigsby discriminated against him

and denied him access to medical devices.  *Id.* ¶ 36.  Title II of the ADA, which "prohibits a

'public entity' from discriminating against a 'qualified individual with a disability' on account of

that individual's disability, covers inmates in state prisons."  *Pennsylvania Dep't of Corr. v.*

*Yeskey*, 524 U.S. 206, 208 (1998) (citation omitted); *see Castle v. Eurofresh, Inc.*, 731 F.3d 901,

910 (9th Cir. 2013) ("Title II applies to the operation of state prisons."); *see also Pierce v. Cnty.*

*of Orange*, 526 F.3d 1190, 1214 (9th Cir. 2008) ("It is undisputed that Title II applies to [county]

jails' services, programs, and activities for detainees.").

Section 12132 provides: "no qualified individual with a disability shall, by reason of such

disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." To state a claim under Title II, a plaintiff must allege that: (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of his disability. *Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1021 (9th Cir. 2010).

The Ninth Circuit has found that the "denial of mobility-assistance devices to persons unable to physically function without them" may violate Title II where the deprivations force disabled prisoners "into the vulnerable position of being dependent on other inmates to enable them to obtain basic services, such as meals, mail, showers, and toilets." *Armstrong v. Brown*, 732 F.3d 955, 960 (9th Cir. 2013); *see also Bogovich v. Sandoval*, 189 F.3d 999, 1002 (9th Cir. 1999).

Here, plaintiff does not identify the physical or mental impairment that qualifies him as "disabled" under the ADA. Neither does he explain how defendants have excluded him from participation in, or denied him the benefits of, the services available to nondisabled inmates. Plaintiff's allegations are insufficient to establish an ADA claim. Accordingly, I recommend that this claim be dismissed.

### f.  Violation of Bane Act, California Civil Code § 52.1(b)

Plaintiff alleges that defendants Grigsby and Casillas violated California's Tom Bane Civil Rights Act. ECF No. 17 ¶ 38. This law protects against interference "by threat, intimidation, or coercion" or an attempt to do the same "with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state." Cal. Civ. Code § 52.1(a). "[I]n order to state a claim under the Bane Act, a plaintiff must allege (1) interference with or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation, or coercion." *Inman v. Anderson*, 294 F.

1  Supp. 3d 907, 925 (N.D. Cal. 2018).

2  "[N]umerous district courts have held . . . that a plaintiff's allegations of the intentional

3  use of excessive force are sufficient to allege a Bane Act claim." *Mundo v. McMahon*, No. ED

4  CV 15-2511-AB-PLA, 2016 WL 8732349, at *8 (C.D. Cal. Sept. 6, 2016), report and

5  recommendation adopted in part, No. ED CV 15-2511-AB-PLA, 2016 WL 8738198 (C.D. Cal.

6  Dec. 23, 2016) (citing *Davis v. City of San Jose*, 69 F. Supp. 3d. 1001, 1008 (N.D. Cal. 2014)).

7  Here, plaintiff has made the requisite allegations of intentional use of excessive force for

8  screening purposes, and so this claim will require a response.

9  **g.  Violation of the Unruh Act, California Civil Code § 51.7(a)**

10  The Unruh Civil Rights Act entitles plaintiff to "full and equal accommodations,

11  advantages, facilities, privileges, or services in all business establishments of every kind

12  whatsoever." Cal. Civ. Code § 51(b). "To prevail on [a] disability discrimination claim under the

13  Unruh Civil Rights Act, [a] plaintiff must establish that (1) he was denied the full and equal

14  accommodations, advantages, facilities, privileges, or services in a business establishment; (2) his

15  disability was a motivating factor for this denial; (3) defendants denied plaintiff the full and equal

16  accommodations, advantages, facilities, privileges, or services; and (4) defendants' wrongful

17  conduct caused plaintiff to suffer injury, damage, loss or harm." *Johnson v. Beahm*, No. 2:11-cv-

18  0294-MCE-JFM, 2011 WL 5508893, at *4 (E.D. Cal. Nov. 8, 2011) (*citing* California Civil Jury

19  Instructions (BAJI), No. 7.92 (Spring 2009)).  A plaintiff who establishes a violation of the ADA

20  need not prove intentional discrimination under the Unruh Act.  *See Munson v. Del Taco, Inc.*, 46

21  Cal. 4th 661 (Cal. 2009) (interpreting Cal. Civ. Code § 51(f), which provides that a "violation of

22  the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101-

23  336) shall also constitute a violation of this section").

24  First, "numerous district courts have held that jails and prison are not business

25  establishments and, as a result, are not subject to suit under section 51." *Crisp v. Wasco State*

26  *Prison*, No. 1:13-CV-01899-SKO PC, 2015 WL 3486950, at *6 (E.D. Cal. June 2, 2015).

27  Second, as noted above, plaintiff has not alleged facts sufficient to sustain a disability

28

1  discrimination suit.  Accordingly, I recommend that this claim be dismissed.

2  **h.  Intentional Infliction of Emotional Distress Claim**

3  "[T]o state a cause of action for intentional infliction of emotional distress a plaintiff must

4  show: (1) outrageous conduct by the defendant; (2) the defendant's intention of causing or

5  reckless disregard of the probability of causing emotional distress; (3) the plaintiff's suffering

6  severe or extreme emotional distress; and (4) actual and proximate causation of the emotional

7  distress by the defendant's outrageous conduct." *Voss v. Baker*, No. 1:17-CV-00626-DAD-EPG-

8  PC, 2017 WL 6406044, at *6 (E.D. Cal. Dec. 15, 2017), *report and recommendation adopted*,

9  No. 1:17-CV-00626-DAD-EPG-PC, 2018 WL 489292 (E.D. Cal. Jan. 19, 2018) (*quoting*

10  *Gabrielle A. v. County of Orange*, 10 Cal. App. 5th 1268, at *14 (2017), *as modified*, (Apr. 18,

11  2017).  It is not enough that a defendant acts with an intent to inflict emotional distress or even

12  that he acts in a way that would entitle plaintiff to damages.  *Id.*  "Liability has been found only

13  where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond

14  all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a

15  civilized community." *Id.* (*quoting Jackson v. Mayweather*, 10 Cal. App. 5th 1240 (2017), *as*

16  *modified* (Apr. 19, 2017)).

17  Plaintiff states that he experienced extreme distress when defendant Casillas confronted

18  him "in an angry and violent manner" following his filing of an appeal.  ECF No. 17 ¶ 31.  He

19  further alleges that he experienced emotional distress and that his post traumatic stress disorder

20  symptoms were exacerbated by plaintiff's conduct.  *Id.*  I find that plaintiff has made allegations

21  that, taken as true, state a cognizable claim for intentional infliction of emotional distress.

22  Accordingly, it is ORDERED that the Clerk of Court assign a district judge to rule on

23  these findings and recommendations.

24  Further, it is RECOMMENDED that:

25  1. plaintiff be allowed to proceed with his Fourth Amendment; Eighth Amendment; First

26  Amendment; Cal. Civ. Code § 52.1, Bane Act; and Intentional Infliction of Emotional Distress

27  claims against defendants Kernan, Martel, Cassilas, Grigsby, and Weinholdt;

28

10

2. all other claims and defendants be dismissed without prejudice for the reasons stated above; and

3. if these recommendations are adopted, the matter be referred back to me so that service may be initiated on defendants.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.


Dated:    February 8, 2021

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE

11